## CLAIM V

## MISCONDUCT BY THE PROSECUTION DEPRIVED PETITIONER OF HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL UNDER THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS.

A wide range of prosecutorial misconduct violated Mr. Raulerson's rights under the United States Constitution. For example, the State suppressed information favorable to the defense at both phases of the trial, and the materiality of the suppressed evidence undermines confidence in the outcome of the guilt-innocence and penalty phases of Petitioner's trial, as well as Petitioner's direct appeal, in violation of the United States Constitution, Brady v. Maryland, 373 U.S. 83 (1963), Kyles v. Whitley, 514 U.S. 419 (1995), and related precedent. Moreover, the State has a continuing obligation to disclose favorable evidence, which extends through post-conviction proceedings, and to the extent that the State continues to withhold favorable evidence from Petitioner, his constitutional rights have been additionally violated. See, e.g, High v. Head, 209 F.3d 1257, 1265 (11th Cir. 2000); Thomas v. Goldsmith, 979 F.2d 746, 749-50 (9th Cir. 1992).

The State took advantage of Petitioner's ignorance of the undisclosed favorable information by arguing to the jury that which it knew or should have known to be false and/or misleading. See United States v. Sanfilippo, 564 F.2d 176, 179 (5th Cir. 1977). The State also allowed its witnesses to convey a false impression to the jury, and there is a reasonable likelihood that the false impression could have affected the jury. See Giglio v. United States, 405 U.S. 150 (1972). Finally, the State knowingly or negligently presented false testimony in pretrial and trial proceedings, and there is a reasonable likelihood that the false testimony could have affected the judgment of the trial court and/or the jury at both phases of the trial. See United States v. Agurs,

48

427 U.S. 97, 103-04 (1976). Regardless of whether the State knew or should have known that it was presenting false evidence, the mere presentation of such evidence and the jury's reliance upon such evidence at both phases of the trial deprived Petitioner of due process. See Sanders v. Sullivan, 863 F.2d 218 (2d Cir. 1988). This pervasive state misconduct violated Petitioner's rights under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution. Because Petitioner has not obtained all of the wrongly withheld evidence, he is unable to plead this Claim with more specificity at this time.

In addition, the prosecution improperly used its peremptory strikes to systematically exclude jurors on the basis of race and/or gender, in violation of the Constitution. See, e.g., Batson v. Kentucky, 476 U.S. 79 (1986); J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127 (1994).[7]

Petitioner's rights to due process and a fair trial were violated by improper and prejudicial remarks by the prosecution in its opening statement to the jury, in contravention of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.[8]  For example, the prosecutor improperly argued that in addition to the charges involved in this case, Petitioner had previously committed a burglary similar to one charged here.

Petitioner's rights to due process and a fair trial were also violated by improper and prejudicial remarks by the prosecution in its closing statement at the guilt-innocence phase of the trial, violating his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the

---

[7] To the extent trial counsel failed to raise and litigate this issue at trial or on appeal, counsel was ineffective, and Petitioner was prejudiced thereby.

[8] To the extent that Petitioner's counsel failed to object to these comments and seek a mistrial or other appropriate relief, or to otherwise preserve objections to the State's closing argument and effectively present claims based on that closing argument in Petitioner's direct appeal, counsel was ineffective, and Petitioner was prejudiced thereby.  In addition, the trial court improperly failed to correct these errors on its own motion.

United States Constitution.  For example, the prosecutor improperly expressed his own opinions as to Petitioner's guilt.[9]

For these reasons, Petitioner is entitled to relief from his convictions and sentences.

## CLAIM VI

### PETITIONER IS SEVERELY MENTALLY ILL AND THEREFORE INELIGIBLE FOR THE DEATH PENALTY UNDER THE EIGHTH AMENDMENT OF THE UNITED STATES CONSTITUTION.

Because Petitioner suffers from severe mental illness, he may not be executed under the Eighth Amendment.  As discussed above with respect to Petitioner's Ineffective Assistance of Counsel claim, and as revealed by the evidence developed primarily in the state habeas proceedings, Petitioner has suffered, since an early age, from long-term depression and emotional disturbances, which are the result of a brutal, violent, and traumatic childhood.  As the evidence below established, Mr. Raulerson suffers from diagnosed severe mental illnesses such as Major Depressive Disorder, Dysthymic Disorder, and dissociation.

The Eighth Amendment's prohibition on cruel and unusual punishment is measured by the "evolving standards of decency that mark the progress of a maturing society." Furman v. Georgia, 408 U.S. 238, 242 (1972) (Douglas, J. concurring) (quoting Trop v. Dulles, 356 U.S. 86 (1958)).  Public opinion, Weems v. United States, 217 U.S. 349, 378 (1910), contemporary human knowledge, Robinson v. California, 370 U.S. 660, 666 (1962), jury verdicts, McGautha v.

---

[9] To the extent that Petitioner's counsel failed to object to these improper comments and seek a mistrial or other appropriate relief, or to otherwise preserve objections to the State's closing argument and effectively present claims based on that argument in Petitioner's direct appeal, counsel was ineffective, and Petitioner was prejudiced thereby.  To the extent that the Court attempted to cure the improper comments by instructing the jury, the Court's instructions failed to cure the error and actually exacerbated the harm by drawing the jury's attention to the improper comments.  The trial court improperly failed to correct these errors on its own motion.

California, 402 U.S. 183, 199 (1971), and legislation, Atkins v. Virginia, 536 U.S. 304 (2002),

can all reflect those evolving standards.

Among the states, there is a growing and wide-ranging recognition that the severely

mentally ill do not merit the death penalty, and that courts must consider a defendant's mental

illness in sentencing those suffering from severe mental illness. For example, some states have

adopted a diminished-capacity defense;[10] some, like Georgia, have adopted the verdict of guilty

but mentally ill;[11] and others provide proportionality review for capital crimes that takes mental

illness into account.[12] While states have not all chosen the same approach, this does not alter the

---

[10] The states have adopted varying approaches to address this matter. Some have adopted diminished capacity as a defense or partial defense. Lewine, Psychiatric Evidence in Criminal Cases for Purposes Other than the Defense of Insanity, 26 Syracuse L. Rev. 1051, 1055 (1975); American Law Institute, Model Penal Code Sec. 4.01 (1962); Ark. Code Ann. § 5-2-312(a), N.J. Stat. Ann.§ 2C:4-2; N.Y. Crim. Proc. Law § 400.27, Utah Code Ann.§76-2-305(2). Among those, many allow the defense to be used only with regard to specific intent crimes. See e.g., State v. Jacobs, 607 N.W.2d 679 (Iowa 2000); People v. Mette, 621 N.W.2d 713 (Mich. Ct. App. 2000); State v. Page, 488 S.E.2d 225 (N.C. 1997); Waye v. Commonwealth, 251 S.E.2d 202 (Va. 1979); Wash. Rev. Code Ann. §10.77.010. Other states have adopted broader definitions of insanity that include 'uncontrollable impulse." See O.C.G.A. § 16-3-3.

[11] A number of others have developed the verdict of guilty but mentally ill. See, e.g., Alaska Stat. 12.47.030 (1992); Ariz. Rev. Stat. Ann. § 13-502; Del. Code Ann. Tit. 11,401(b) (1987); Ga. Code Ann. 17-7-131(b)(1)(D); Ill. Comp. Stat. Ann, ch.720, para 5/6-2(c) (Smith-Hurd 1993); Ind. Code Ann. 35-35-1-1 (West 1986); Ky. Rev. State. Ann. 504.130 (Baldwin 1984); Mich. Comp. Laws Ann. 768.38 (West 1982); Nev. Rev. Stat. Ann. § 174.041; N.M. Stat. Ann 31-9-3(A) (Michie 1984); Pa. Stat. Ann. Tit. 18, § 314 (1983); S.C. Code Ann. 17-24-20 (Law Co-op Supp. 1992); S.D. Codified Laws Ann. 23A-26-14 (1988); Utah Code Ann. 77-13-1 (1990).

[12] Still other states have fashioned unique accommodations for the criminally responsible but mentally ill through legislation and case law. See, e.g., Idaho Code § 19-2523; Mass. Gen. Laws Ann. Ch. 279, § 69; Minn. Stat. Ann. § 611.026; Miss. Code Ann. § 99-13-9; Mont. Code Ann. § 46-14-101; People v. Williams, 941 P.2d 752 (Cal. 1997); State v. Borman, 956 P.2d 1325 (Kan. 1998); State v. Galloway, 628 A.2d 735 (N.J. 1993). For example, in at least five additional states — Arizona, Florida, Mississippi, Ohio and Nevada — proportionality review has served to remove many mentally ill offenders from the ranks of the condemned despite the apparent availability of capital punishment in such cases. See e.g., State v. Jimenez, 799 P.2d 785, 797-801 (Ariz. 1990) (reducing death sentence to life imprisonment based on defendant's mental incapacity).

fact that the efforts themselves document an evolving standard of decency of refusing to treat

those disabled by mental illness with the same severity as those who are not.

Advances in science, coupled with the standards of decency that prevail at this point in

our Nation's history, dictate that it is no longer permissible under the "cruel and unusual

punishment" clause of the United States Constitution to execute severely mentally ill persons like

Mr. Raulerson.  The practice violates evolving standards of decency, and is cruel and inhumane.

Accordingly, Mr. Raulerson's death sentence is invalid, and must be reversed.


### CLAIM VII

### PETITIONER WAS DENIED ACCESS TO COMPETENT MENTAL HEALTH ASSISTANCE, IN VIOLATION OF HIS FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION.

A criminal defendant is entitled to competent expert psychiatric assistance when the state

makes his or her mental state relevant to guilt-innocence or sentencing.  See Ake v. Oklahoma,

470 U.S. 68 (1985).  Mr. Raulerson's mental condition was relevant in many ways to the guilt-

innocence and sentencing phases of his trial, including:  (a) whether he possessed the specific

intent to commit malice murder; (b) whether he possessed an abandoned or malignant heart to

commit malice murder; (c) whether he was able to rationally communicate with his attorney and

make rational choices about his representation; (d) whether he was able to appreciate the

wrongfulness of his conduct and conform his conduct to the dictates of the law; (e) whether he

was able to knowingly and rationally waive the right to counsel prior to making a statement;

(f) whether myriad mitigating factors were shown; and (g) whether myriad aggravating factors were shown.

Although federal law entitled Mr. Raulerson to professionally competent and independent mental health assistance on these issues, he did not receive such assistance. Indeed, the mental health experts retained by trial counsel did not perform a competent mental health evaluation, and were not able to obtain the relevant records and other assistance needed to make such a competent evaluation, in large part because trial counsel failed to provide them with such information and assistance. Had such information and assistance been provided to the experts, and had the experts thus been able to provide satisfactory assistance and present the results of their investigations to the jury, there is a reasonable probability that the outcome of both phase of Petitioner's trial would have been different. Mr. Raulerson is therefore entitled to a new trial and sentencing proceeding, at which proper assistance is rendered.

The state habeas court erroneously concluded that Mr. Raulerson had "no constitutional right to the effective assistance of a mental health expert." 3/24/04 Order at 4. But the Due Process Clause requires adequate mental health assistance for a criminal defendant as a manner of fundamental fairness, in order to assure reliability in the truth-determining process. See Ake, 470 U.S. at 79-86. As the Court explained in Ake, the provision of competent, independent and informed psychiatric expertise to a defendant assures the defendant "a fair opportunity to present his defense," id. at 76 and also "enable[s] the jury to make its most accurate determination of the truth on the issue before them," id. at 81. Where, as here, trial counsel failed to ensure that the

defense experts were adequately informed and were performing competently, Petitioner was unconstitutionally deprived of a basic tool of his defense.[13]

## CLAIM VIII

### THE TRIAL COURT CONDUCTED PETITIONER'S TRIAL IN A MANNER THAT VIOLATED PETITIONER'S RIGHTS UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

The trial court conducted Petitioner's trial in a manner that violated his rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and the courts below failed to remedy these violations. These violations of Petitioner's constitutional rights include, but are not limited to, the following:

- The trial court allowed the introduction of illegally obtained confessions and evidence despite proper motions to suppress;

- The trial court refused to strike prospective jurors who demonstrated bias against the defense;

- The trial court unfairly restricted Petitioner's right to voir dire prospective jurors;

- The trial court improperly denied Petitioner's meritorious motions for a mistrial including, but not limited to a motion for a mistrial made by Petitioner after the trial was interrupted due to a bomb threat, see T. Tr. Vol. 10, at 3-4;

- The trial court admitted improper evidence despite proper objections;

- The trial court refused to allow admissible evidence presented by Petitioner; and

---

[13] To the extent trial counsel failed adequately to raise and/or litigate these issues at trial or on appeal, counsel rendered ineffective assistance of counsel and Petitioner was actually prejudiced thereby.

- The trial court gave improper and unconstitutional jury instructions during the guilt-innocence and sentencing phase of the case, and refused to give proper instructions requested by Petitioner.

These errors compromised, among other things, Petitioner's rights under the Sixth and Fourteenth Amendments to the United States Constitution, which entitle a criminal defendant to an impartial jury, and not merely to jurors who swear to be indifferent. See, e.g., Irvin v. Dowd, 366 U.S. 717, 728 (1961). Moreover, the Constitution requires that a juror appear to be, as well as be, unbiased. See, e.g., Aldridge v. United States, 283 U.S. 308, 314-15 (1931). When the life or death of a criminal defendant is at stake, absolute neutrality on the part of the jurors is especially critical. See, e.g., Gardner v. Florida, 430 U.S. 349, 358 (1977). Thus, a juror who has made up his mind prior to trial that he will not weigh evidence in mitigation is not impartial. Such views on capital punishment "would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" Wainwright v. Witt, 469 U.S. 412, 424 (1985). Because the trial court permitted jurors unfairly biased in favor of the death penalty to serve on Mr. Raulerson's jury, and due to the other errors described above, Mr. Raulerson's convictions and death sentence violate the Constitution's demands.

## CLAIM IX

### JUROR MISCONDUCT VIOLATED PETITIONER'S RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

Misconduct on the part of the jurors during trial included, but was not limited to, discussing the case after being admonished not to discuss it, improper consideration of matters

55

extraneous to the trial, improper racial attitudes which infected the deliberations of the jury, false

or misleading responses of jurors on voir dire, improper biases of jurors which infected their

deliberations,  improper exposure to the prejudicial opinions of third parties, improper

communications with third parties, improper communication with jury bailiffs, improper ex parte

communications with the trial judge, and improperly prejudging the guilt-innocence and penalty

phases of Petitioner's trial.

These numerous instances of juror misconduct deprived Mr. Raulerson of a fair trial, in

violation of his Constitutional rights.  See e.g., Spencer v. Georgia, 500 U.S. 960 (1991)

(Kennedy, J., concurring in denial of certiorari) (racial epithets used in jury room); McCleskey v.

Kemp. 481 U.S. 279 (1987) (racial animus of decision makers); Jones v. Kemp, 706 F. Supp.

1534 (N.D. Ga. 1989) (jury consideration of extraneous religious information); Turner v.

Louisiana, 379 U.S. 466 (1965) (improper communications with bailiffs); Rushen v. Spain, 464

U.S. 114 (1983) (improper communications with trial judge); United States v. Scott, 854 F.2d

697, 700 (5th Cir. 1988) (failure to respond truthfully on voir dire).[14]

---

[14] To the extent that Petitioner's counsel failed to protect Petitioner's rights in this regard, counsel's performance was unreasonably deficient, and Petitioner was prejudiced by the deficiencies of his counsel.  To the extent that the trial court was implicated in or aware of any of the jury misconduct, and yet failed to advise Petitioner or correct the misconduct, the court's actions constitute an independent violation of Petitioner's rights.  To the extent that the State, through any of its entities, was implicated in or aware of any of the jury misconduct, the State's action (or failure to act) also deprived Petitioner of his constitutional rights.  Finally, to the extent that Petitioner's counsel failed to argue, develop, or present these issues, failed to adequately preserve objections thereto, or failed to effectively litigate these issues on direct appeal, Petitioner's counsel rendered ineffective assistance, and Petitioner was prejudiced thereby.

### CLAIM X

**PETITIONER WAS DENIED DUE PROCESS OF LAW BECAUSE THE SAME JURY THAT CONVICTED HIM WAS RESPONSIBLE FOR DETERMINING THE APPROPRIATE SENTENCE, IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.**

The trial court should have bifurcated the guilt-innocence proceedings from the sentencing proceedings at Mr. Raulerson's trial by empaneling two different panels of jurors — one panel to hear evidence on the issues of guilt or innocence, and the other panel to make a determination of sentence in the event of defendant's conviction. The trial court's failure to do so violated Petitioner's constitutional rights and resulted in a fundamentally unfair trial.

In death penalty cases, all jurors are "death qualified" in a process that excludes both those who are unable to impose a death sentence and those who would automatically impose death. See generally Witherspoon v. Illinois, 391 U.S. 510 (1968); O.C.G.A. § 15-12-164 (a)(4) (requiring that jurors be asked whether they are opposed to capital punishment[15]). During this process, the jurors who will first decide the issue of the defendant's guilt or innocence are asked to consider whether or not they would be able to inflict a particular punishment; questioning takes place by the trial court, as well as by the attorneys for each side.

This death qualification process thus predisposes jurors to convict a defendant, as the presumption of innocence is entirely subordinated to the punishment-focused death-qualification questions. By querying jurors on their opinions about punishment before they have had a trial to

---

[15] Incidentally, this question does not elicit other points of view on the death penalty that could interfere with their ability to be fair and impartial, see e.g., Pope v. State, 345 S.E.2d 831 (Ga. 1986), nor does it elicit a juror's ability to set aside any personal views and decide the case on the evidence, see Gray v. Mississippi, 481 U.S. 648 (1987); Davis v. Georgia, 429 U.S. 122 (1976).

determine guilt or innocence, the jurors are essentially told to assume that the defendant is guilty. This process violated Mr. Raulerson's right to a "'fair trial by a panel of impartial, "indifferent" jurors'" and thus "'violate[d] even the minimal standards of due process.'" Morgan v. Illinois, 504 U.S. 719, 727 (1992) (quoting Irvin v. Dowd, 366 U.S. 717, 721-22 (1961)).

      In addition, Petitioner's due process rights were violated when the members of the jury who had rejected Petitioner's guilt-phase defense, had convicted him, and had necessarily developed a bias against the credibility of the Petitioner and Petitioner's counsel, were then expected to sit as fair and impartial decision-makers on the sensitive issue of whether to impose the death penalty.  For similar reasons, the trial court's failure to bifurcate violated Petitioner's Eighth Amendment right to be free from "cruel and unusual punishment," see, e.g., Grigsby v. Mabry, 758 F.2d 226 (8th Cir. 1985), reversed on other grounds sub nom. Lockhart v. McCree, 476 U. S. 162 (1986).  Because a separate penalty phase jury was not empaneled, Petitioner was denied due process of law, in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.[16]

---

[16] To the extent that counsel failed to raise or litigate this issue effectively during trial, counsel's deficient performance was unreasonable and Petitioner was prejudiced thereby.  But for counsel's individual and/or cumulative unprofessional errors at all phases of his capital proceeding there is a reasonable probability that the result of the proceedings would have been different.  To the extent that counsel failed to raise and litigate these issues effectively on appeal, counsel rendered constitutionally ineffective assistance of counsel and Petitioner was prejudiced thereby.

## CLAIM XI

### THE GUILT-INNOCENCE PHASE JURY INSTRUCTIONS VIOLATED PETITIONER'S RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

The trial court's jury instructions during the guilt-innocence phase of Petitioner's trial violated Petitioner's rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution. The jury instructions contained many prejudicial legal errors, including but not limited to:  improperly charging the jury on the "beyond a reasonable doubt" burden of proof, thus permitting the jury to convict Petitioner upon less than "utmost certainty" of guilt; improperly requiring Petitioner to bear the burden on proving his mental retardation beyond a reasonable doubt; improperly charging on impeachment of witnesses; improperly charged, vague, and essentially standardless definitions of statutory terms; and improperly charging the jury on the offenses charged in the indictment.[17]

## CLAIM XII

### THE DEATH PENALTY IN GEORGIA IS IMPOSED ARBITRARILY AND CAPRICIOUSLY AND AMOUNTS TO CRUEL AND UNUSUAL PUNISHMENT, VIOLATING PETITIONER'S RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

Petitioner's sentence of death was imposed arbitrarily and capriciously, and pursuant to a pattern and practice of discrimination in the administration and imposition of the death penalty in

---

[17] To the extent that Petitioner's counsel failed adequately to preserve objections to the trial court's charge or effectively litigate these issues on appeal, Petitioner's counsel rendered ineffective assistance. Had counsel performed reasonably, there is a reasonable probability that the outcome of the guilt-innocence phase of trial would have been different.

Georgia, thereby rendering Petitioner's sentence of death unlawful and in violation of

Petitioner's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United

States Constitution.  The grounds for this claim include, but are not limited to, the following:

- Georgia's statutory death penalty procedures, as applied, do not result in fair, nondiscriminatory imposition of the death sentence, and therefore violate the Eighth Amendment to the United States Constitution and the corresponding provisions of the Georgia Constitution;

- The death penalty is imposed arbitrarily, capriciously, and discriminatorily in the State of Georgia, and was so imposed in Petitioner's case;

- Georgia cases similar to that of Petitioner with regard to both the nature and circumstances of the offense, prior record, culpability and life and character of the accused, have resulted in lesser punishments than death;

- Georgia cases involving greater aggravating circumstances than Petitioner's case with regard to both the nature and circumstances of the offense, prior record, culpability, and life and character of the accused, have resulted in lesser punishments than death;

- There is no constitutionally permissible way to distinguish the few cases in which the death penalty has been imposed, and Petitioner's case in particular, from the many similar cases in which a lesser punishment has been imposed;

- In both the United States and the State of Georgia, the death penalty has been and continues to be imposed discriminatorily against African-Americans, males, and poor persons, and Petitioner's sentence of death was imposed because he is a poor male;

60

- There exists in Georgia a pattern and practice of prosecuting authorities, courts, and juries to discriminate on the basis of race, gender, and poverty in deciding whether to seek or impose the death penalty in cases similar to that of Petitioner, thereby making the imposition of the sentence of death against Petitioner a violation of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.[18]

## CLAIM XIII

**GEORGIA'S UNIFIED APPEAL PROCEDURE VIOLATED PETITIONER'S RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.**

On its face and as applied to Petitioner's case, Georgia's Unified Appeal Procedure ("UAP"), O.C.G.A. § 17-10-36, denied Petitioner's rights as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution. The UAP requires the trial court to hold "conferences" with the defendant, defense counsel and the prosecutor at various stages throughout the course of a capital case. At each conference, the trial court makes inquiries of trial counsel as to whether the defense will raise various issues at that particular stage of the proceeding, and further inquires of the defendant as to whether he waived issues which have been discussed and not raised. The prosecutor is present at each conference. This procedure violates defendants' constitutional rights, including those of Mr. Raulerson.

The UAP violates due process by upsetting the balance of power between the state and the accused in the adversarial system, as the UAP forces a defendant to disclose his strategy and tactics throughout the trial proceedings. The net effect of this process is to permit the state to

---

[18] To the extent trial counsel failed to raise and/or adequately litigate this claim at trial or on appeal, counsel was ineffective, and Petitioner was prejudiced thereby.

61

learn, at various junctures of the case, the intentions of the defense without itself having to disclose any information.  The UAP also violates a defendant's right to silence.  When represented by counsel, a criminal defendant enjoys the right to be heard through counsel.  Under the UAP, this right is not honored, as repeated inquiries are made of the defendant — as they were of Mr. Raulerson — about strategy and satisfaction with counsel.  The UAP also denies a capital defendant his right to equal protection, as, for no rational reason, the UAP imposes the costs and burdens described here upon a capital defendant, but not other criminal defendants.

In addition, the UAP violates the right to counsel in at least three respects.  First, the process of regularly asking counsel what issues will be raised, which occurred several times during Petitioner's trial, necessarily results in a disclosure of counsel's trial strategy in violation of the work product privilege.  Second, the UAP requires the defendant at each conference to inform the court whether he or she is satisfied with the services of counsel.  This procedure imposes an impossible inquiry upon a lay defendant under the strain of trial, particularly because it fails to provide the defendant with independent counsel to assist in making this judgment.  Third, the UAP thrusts the court directly into the attorney-client relationship, requiring counsel to advise the defendant of issues which have little, if any, relevance to the case, thereby diverting time better spent on investigating and preparing an adequate defense.

Because of the many costs imposed upon the capital defendant by the UAP, the reliability of the trial and sentencing hearing is diminished to the detriment of the right to be tried in a fundamentally fair proceeding.  Because Petitioner was tried, convicted, and sentenced pursuant to this procedure, he was denied minimal fairness and the reliability essential in capital cases.[19]

---

[19] To the extent that Petitioner's counsel failed to argue, develop, or present these issues, failed to adequately preserve objections thereto, or failed to effectively litigate these issues on direct appeal, Petitioner's counsel rendered ineffective assistance, which actually prejudiced Petitioner.

## CLAIM XIV

**PETITIONER'S TRIAL CONTAINED PROCEDURAL AND SUBSTANTIVE ERRORS, WHICH CANNOT BE HARMLESS WHEN VIEWED AS A WHOLE SINCE THE COMBINATION OF ERRORS DEPRIVED HIM OF THE FUNDAMENTALLY FAIR TRIAL GUARANTEED UNDER THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS.**

In <u>Mathews v. Eldridge</u>, 424 U.S. 319, (1976) the United States Supreme Court articulated the well-known three-factor test for assessing whether government procedures satisfy the federal constitutional guarantee of due process. As the Court was careful to explain, "'<u>due process is flexible and calls for such procedural protections as the particular situation demands</u>.'" <u>Id.</u> at 334-35 (quoting <u>Morrissey v. Brewer</u>, 408 U.S. 471, 481 (1972)) (emphasis added). <u>Mathews</u> itself was a case concerning the fundamental question of when formal hearings on disputed issues are required, and the Supreme Court's analysis in that case is thus highly enlightening and instructive in the present context. <u>Mathews</u> teaches that it is simply not enough for the Government to provide "a process" to dispose of disputed matters. Rather, the process must be fair to all parties and must be flexible enough to accommodate the particular litigation involved. A capital defendant has a "constitutional right to a fair trial regardless of . . . [the crime]." <u>Heath v. Jones</u>, 941 F.2d 1126, 1131 (11th Cir. 1991).

Mr. Raulerson did not receive the fundamentally fair trial that due process requires. Indeed, it is Petitioner's contention that the process itself has failed him — the sheer number and types of errors involved in his trial, when considered as a whole, virtually dictated the death sentence that he received. The systemic and case-specific flaws that are responsible for Mr. Raulerson's convictions and sentence are numerous, and have been pointed out throughout not

63

only in this Petition for Writ of Habeas Corpus, but also in Petitioner's direct state habeas proceedings, his direct appeal, and his Motion for New Trial.  Although each individual error entitles Mr. Raulerson to relief in this Court, the fact is that addressing these errors on an individual basis will not afford adequate safeguards against an improper conviction and improperly imposed death sentence — safeguards which are required by the Constitution.

The United States Supreme Court has consistently emphasized the uniqueness of death as a criminal punishment.  Death is "an unusually severe punishment, unusual in its pain, in its finality, and in its enormity."  Furman, 408 U.S. at 287 (Brennan, J., concurring).  It differs from lesser sentences "not in degree but in kind.  It is unique in its total irrevocability."  Id. at 306 (Stewart, J., concurring).  The severity of the sentence "mandates careful scrutiny in the review of any colorable claim of error."  Zant v. Stephens, 462 U.S. 862, 885 (1983).  Thus, greater caution and safeguards are required to ensure the constitutional validity of each death sentence: "Death, in its finality, differs more from life imprisonment than a 100-year prison term differs from one of only a year or two.  Because of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case."  Woodson v. North Carolina, 428 U.S. 280, 305 (1976) (emphasis added); see Gardner v. Florida, 430 U.S. 349, 357-58 (1977) ("[D]eath is a different kind of punishment from any other which may be imposed in this country . . . . It is of vital importance to the defendant and to the community that any decision to impose the death sentence be, and appear to be, based on reason rather than caprice or emotion.").  These heightened procedural protections have been applied to both the sentencing and guilt-innocence phases of a capital defendant's trial.  See, e.g.,

64

Beck v. Alabama, 447 U.S. 625, 638 (1980) (recognizing the unconstitutionality of procedures that "diminish the reliability" of either guilt-innocence or sentencing phase determinations).

As detailed in this Petition, numerous and varied violations of law occurred at both stages of Mr. Raulerson's trial. These violations, which occurred throughout trial, should not be considered in serene isolation. Rather, due process demands that Petitioner's claims be considered in the aggregate, and places the burden on the State to show that the cumulative impact of these errors had no effect on Petitioner's convictions or sentence of death. When these separate infractions are viewed in their totality, it is clear that Petitioner did not receive the fundamentally fair trial to which he was entitled under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution. Rather, the cumulative effect of these errors — including trial counsel's failure to investigate and present an adequate defense and mitigation case; Georgia's failure to provide a constitutionally adequate procedure to assess Mr. Raulerson's mental retardation; the trial court's numerous errors, including its erroneous penalty phase jury instructions; and the State's misconduct — was to virtually dictate Mr. Raulerson's death sentence. Relief is mandated on Petitioner's individual claims, and certainly based upon their effect in the aggregate.[20]

---

[20] To the extent defense counsel failed to litigate this issue effectively at trial or on appeal, counsel performed ineffectively and Petitioner was actually prejudiced thereby.

## **PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that this Court:

1.      Review the claims alleged in this Petition on the merits;

2.      Issue a Writ of Habeas Corpus to have Petitioner brought before it to the end that he may be discharged from his unconstitutional confinement and restraint, and/or be relieved of his unconstitutional sentence of death;

3.      Permit Petitioner, who is indigent, to proceed in forma pauperis;

4.      Conduct a hearing at which proof may be offered concerning the allegations of this petition;

5.      Grant Petitioner, who is indigent, sufficient funds to secure the expert testimony necessary to prove the facts as alleged in this petition;

6.      Allow discovery, pursuant to Rule 6, Rules Governing Section 2254 Cases In the United States District Court;

7.      Grant Petitioner the authority to obtain subpoenas in forma pauperis for witnesses and documents necessary to prove the facts as alleged in this petition;

8.      Allow Petitioner to amend his petition after the assistance of experts and discovery;

9.      Allow Petitioner to brief the precedential and statutory law relevant to his case in light of the record and the allegations raised by this petition;

10.      Allow Petitioner to respond to any procedural or affirmative defenses, and to any other arguments that the Respondent might raise in this action; and

11.      Grant such other relief as may be appropriate.

66

This 15ᵗʰ day of July, 2005.

Respectfully submitted,

BILLY DANIEL RAULERSON, JR.


By:_____

Steven L. Beauvais
Georgia Bar No. 045709
Local Counsel

ZIPPERER, LORBERBAUM & BEAUVAIS
200 East Saint Julian Street
Savannah, Georgia 31401
(912) 232-3770


Julie M. Carpenter
D.C. Bar No. 418768
Lead Counsel

David W. DeBruin
D.C. Bar No. 337626
Co-Counsel

Kathleen R. Hartnett
D.C. Bar No. 483250
Co-Counsel

JENNER & BLOCK LLP
601 13th Street, N.W.
Washington, D.C.  20005
(202) 639-6000

COUNSEL FOR PETITIONER

67

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### Savannah Division

BILLY DANIEL RAULERSON,
    UNO-462992,

          Petitioner,

          v.

WILLIAM M. TERRY, Warden
Georgia Diagnostic Prison

          Respondent.

Habeas Corpus

Case No. _____


## VERIFICATION

State of Georgia

County of Butts

     Before me, the undersigned authority, personally appeared Billy Daniel Raulerson, who, being first duly sworn, says that he has personal knowledge of the allegations in the foregoing Petition for Writ of Habeas Corpus, and that the allegations and statements contained therein are true and correct to the best of his knowledge.

<br>

Billy Daniel Raulerson

<br>

Sworn to and subscribed before me
this _____ day of July, 2005.

<br>

NOTARY PUBLIC

My commission expires:

AMY CONKLIN
MY COMMISSION EXPIRES
APR.
18
2009
COBB COUNTY, GEORGIA
NOTARY PUBLIC

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION**

|  |  |
|---|---|
| **BILLY DANIEL RAULERSON, JR.,** ) | |
| ) | |
| *Petitioner,* ) | |
| ) | |
| v. ) | **Case No. _____** |
| ) | |
| **WILLIAM M. TERRY, Warden,** ) | |
| **Georgia Diagnostic Prison,** ) | |
| ) | |
| *Respondent.* ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2005, I caused a copy of the foregoing pleading to be

served upon Respondent by first-class United States mail addressed as follows:

> Karen Anderson
> Assistant Attorney General
> 40 Capitol Square
> Atlanta, Georgia 30344

> _____
> Steven L. Beauvais
> Attorney for Petitioner

68